IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Marcus Lamorise Bess,<br><br>Defendant. | Cr. No. 3:23-06-CMC<br><br><br>Opinion and Order |

This matter is before the court on Defendant's motion to dismiss the Indictment. ECF No. 44. He contends the charge against him, for felon in possession of a firearm under 18 U.S.C. § 922(g)(1), is unconstitutional after the Supreme Court's opinion in *New York State Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S. __, 42 S. Ct. 2111 (2022). He asserts the statute is unconstitutional on its face, as his conduct is presumptively protected under the Second Amendment, and felon disarmament laws did not exist at the time the country was founded. ECF No. 44 at 1-2.

1. **Legal Standard**

A district court may dismiss an indictment under Rule 12 "where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012).

   a. *Facial Challenges*

As noted above, Defendant brings a facial challenge to § 922(g)(1). Defendant does not argue his particular convictions should not qualify him as a restricted person under § 922(g)(1), or that he is a non-violent felon who should not be subject to such restriction. Instead, he contends

§ 922(g)(1) is unconstitutional as contrary to the Second Amendment. A facial challenge can only succeed if the defendant establishes that "no set of circumstances exists under which the law would be valid, *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008); *see also United States v. Hosford*, 843 F.3d 161, 165 (4th Cir. 2016).

  b.  *The Second Amendment*

The Second Amendment provides "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. In 2008, the Supreme Court decided *District of Columbia v. Heller*, 554 U.S. 570 (2008), in which it determined the Second Amendment "conferred an individual right to keep and bear arms, finding the "right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 595, 635. Two years later, the Court held the Second Amendment fully applicable to the states by virtue of the Fourteenth Amendment. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010).

After these two cases, the Fourth Circuit adopted a two-step approach to evaluate Second Amendment challenges. *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). The first inquiry asks whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee as historically understood. *Id.* at 680. If yes, the second step involved application of the appropriate form of means-end scrutiny. *Id.* The applicable level of scrutiny (intermediate or strict) depended on the nature of the conduct being regulated and the degree to which the challenged law burdened the right to keep and bear arms. *Id.* at 682 (applying intermediate scrutiny to a challenge to § 922(g)(9), which criminalizes possessing firearms after having been convicted of a "misdemeanor crime of domestic violence."). The Fourth Circuit

specifically held § 922(g)(1) to be constitutional after *Heller* on at least two occasions. *United States v. Moore*, 666 F.3d 313, 317 (4th Cir. 2012); *United States v. Pruess*, 703 F.3d 242, 246 (4th Cir. 2012). In 2017, the Fourth Circuit held "a challenger convicted of a state law felony [even a non-violent one] generally cannot satisfy step one of the *Chester* inquiry." *Hamilton v. Pallozzi*, 848 F.3d 614, 625 (4th Cir. 2017) ("A felon cannot be returned to the category of 'law-abiding, responsible citizens' for purpose of the Second Amendment and so cannot succeed at step one of the *Chester* inquiry, unless the felony conviction is pardoned or the law defining the crime of conviction is found unconstitutional or otherwise unlawful.").

The Supreme Court then decided *Bruen*, finding the two-step approach was "one step too many," and that "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." 597 U.S. __, 42 S. Ct. at 2127. Instead, it held, if the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct, and "the government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

2. **Discussion**

The Second Amendment guarantees the "right of *the people* to keep and bear Arms." Accordingly, for Defendant's challenge to succeed, the court must find the plain language of the Second Amendment, "the people," covers persons convicted of crimes punishable by a term exceeding one year – for the sake of simplicity, "felons."

Supreme Court opinions regarding firearm restrictions under the Second Amendment are replete with language referring to "the people" as "law-abiding, responsible citizens." *See Bruen*, 142 S. Ct. at 2156 ("It is undisputed that petitioners Koch and Nash – two ordinary, law-abiding, adult citizens – are part of the 'people' whom the Second Amendment protects."); *Heller*, 554 U.S.

at 635 ("And whatever else it leaves to further evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."). Defendants convicted of a violation of § 922(g)(1), however, are by definition not "law-abiding citizens," as they have been convicted of at least one crime punishable by a term of imprisonment exceeding one year. Defendant, in fact, has been convicted of three crimes punishable by a term of imprisonment exceeding one year – forgery, grand larceny, and failing to stop for a blue light.[1]

Dicta from *Heller* confirms the Supreme Court did not intend to upend laws restricting firearm possession for felons. Justice Scalia, writing for the majority, explained "[l]ike most rights, the Second Amendment is not unlimited. . . . The Court's opinion should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Heller*, 554 U.S. at 626. The *McDonald* Court agreed, noting "[w]e made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill . . . We repeat those assurances here." *McDonald*, 561 U.S. at 786. Although *Bruen's* majority did not address the issue of firearm restrictions on felons, Justice Kavanaugh reaffirmed this principle in his concurrence, joined by Chief Justice Roberts. He explained "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations," and quoted *Heller's* statement on the prohibition on possession of firearms by felons as a "presumptively lawful measure." *Bruen*, 142 S. Ct. at 2162 (Kavanaugh J., concurring). In another concurrence, Justice Alito noted the *Bruen* decision did not "disturb

---

[1] The court acknowledges these are likely not violent felonies, although it does not have further information about the circumstances of Defendant's arrests and convictions. However, § 922(g)(1) does not require conviction for a violent felony to prohibit a person from possessing a firearm after a felony conviction.

anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns . . . All we decide in this case is that the Second Amendment protects the right of law-abiding people to carry a gun outside the home for self defense . . . ." *Id.* at 2157 (Alito J., concurring).  Justice Breyer dissenting, joined by Justices Sotomayor and Kagan, noted: "Like Justice Kavanaugh, I understand the Court's opinion today to cast no doubt" on the aspect of *Heller's* holding regarding longstanding prohibitions, including restrictions on felons. *Id.* at 2189.

Defendant asserts the language from *Heller* is dicta, and therefore it "should not be treated as a holding" of the Supreme Court.  ECF No. 44 at 15.  He agrees lower courts should give "great weight" to Supreme Court dicta, "at least when the Court's opinion engages in an 'extended discussion' of an issue, but lower courts are "not bound by dicta or separate opinions of the Supreme Court." *Id.* at 15-16.  He contends the dicta in *Heller* is not the type that should be given deference or great weight as it is "dicta based on a factually unsupportable premise." *Id.* at 17.

The court agrees the language from *Heller* and *McDonald* constitutes dicta; however, does not agree courts are free to ignore it. To the contrary, this circuit has routinely afforded substantial, if not controlling deference to dicta from the Supreme Court. *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 281–82 (4th Cir. 2019). "Respect for the rule of law demands nothing less: lower courts grappling with complex legal questions of first impression must give due weight to guidance from the Supreme Court, so as to ensure the consistent and uniform development and application of the law." *Id.* at 282.  Such "observations by the Court, . . . constitute the sort of dicta that has considerable persuasive value in the inferior courts." *Lambeth v. Bd. of County Comm'n*, 407 F.3d 266, 271 (4th Cir. 2005).

Defendant contends *Heller's* dicta, reaffirmed in *McDonald* and by six Justices in *Bruen*, is overruled by the framework pronounced in *Bruen*. This court disagrees. It may not be controlling, but is persuasive that the Supreme Court did not intend to question the constitutionality of laws, such as § 922(g)(1), prohibiting felons from possessing firearms.

Considerable numbers of district courts agree. Cases from our sister courts evaluating whether § 922(g)(1) is constitutional post-*Bruen* have held, in significant numbers, challenges to this statute fail. *See, e.g., Collins v. Garland,* No. ADC-23-0042, 2023 WL 6962723, at *5-6 (D. Md. Oct. 20, 2023) (finding "Plaintiff's previous criminal convictions exclude him from the category of law-abiding citizens who are entitled to the protections of the Second Amendment," and § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation); *Alexander v. United States*, No. CR RDB-19-0020, 2023 WL 6845424, at *7 (D. Md. Oct. 17, 2023) ("This Court does not agree that *Bruen*—which applied to law-abiding citizens in possession of a weapon—called into question the constitutionality of § 922(g)(1). The Supreme Court has repeatedly emphasized that felon in possession prohibitions do not violate the Second Amendment," and collecting cases in the Fourth Circuit holding § 922(g)(1) constitutional after *Bruen*); *United States v. Smith*, No. 2:23-cr-363, 2023 WL 5311490, at *2 (D.S.C. Aug. 16, 2023) (finding § 922(g)(1) "valid and consistent with the Second Amendment's text and understanding"); *United States v. Hughes*, No. 2:22-cr-640, 2023 WL 4205226, at *6 n.11 (D.S.C. June 27, 2023) ("For example, in the Fourth Circuit alone, at least twenty district courts have found § 922(g)(1) constitutional since *Bruen* was decided.").

    a. <u>Fourth Circuit Jurisprudence</u>

Although the Fourth Circuit has not addressed the constitutionality of § 922(g)(1) after *Bruen*, two pre-*Bruen* cases decided by the Fourth Circuit upheld the constitutionality of

6

§ 922(g)(1). In *Moore,* the court considered a facial and as-applied challenge to § 922(g)(1) by a defendant with two previous felony convictions for selling or delivering cocaine, three common law robberies, and two assaults with a deadly weapon on a government official. *Moore*, 666 F.3d at 315. The court found § 922(g)(1) constitutional based on the "presumptively lawful" regulatory restriction language in *Heller*, referencing dicta from *Heller* regarding longstanding prohibitions on possession of firearms by felons as well. For a "presumptively lawful" statute, the court noted the *Chester* analysis used by the Fourth Circuit in Second Amendment cases would be streamlined, and a facial challenge would fail based on the "clear declaration in *Heller* that such felon in possession laws are a presumptively lawful regulatory measure." *Id.* at 318. Whether such restrictions were "presumptively lawful" because they regulate conduct outside the scope of the Second Amendment, or they pass muster under any level of scrutiny, either "negates a facial challenge to a felon in possession statute like § 922(g)(1)." *Id.* "Since clearly there are cases where a felon firearm possession is constitutionally limited, § 922(g)(1) survives a facial challenge." *Id.* at 319. *Moore* also dismissed the defendant's as-applied challenge, considering his criminal history, finding he was not a "law abiding, responsible citizen" and therefore did "not fall within the category of citizens to which the *Heller* court ascribed the Second Amendment protection . . ." *Id.*

The same year, the Fourth Circuit confronted an as-applied challenge to § 922(g)(1) by a defendant previously convicted of "numerous firearms violations." *Pruess*, 703 F.3d at 244. His convictions involved dealing firearms, not using them, thus the defendant considered himself a "non-violent felon" who was protected by the Second Amendment. *Id*. at 245. The court found this defendant, like the one in *Moore*, could "not rebut the presumption of lawfulness of the felon-in-possession prohibition as applied to him," finding him "hardly 'law-abiding' and 'responsible.'"

7

*Id.* That court further noted the types of weapons and explosives possessed demonstrated the firearms and ammunition could not be intended for defense of hearth and home, as approved in *Heller*. *Id.* at 246. The court therefore decided, "as in *Moore*, we can conclude without a full *Chester* analysis that Pruess' conduct lies outside the scope of the Second Amendment's protection." *Id.* It noted, as had *Moore*, that sister circuits had consistently upheld application of § 922(g)(1) even to non-violent felons, and no court of appeals after *Heller* had reversed a single conviction under § 922(g) on Second Amendment grounds. *Id.* at 247. The court concluded "application of the felon-in-possession prohibition to allegedly non-violent felons like Pruess does not violate the Second Amendment." *Id.*; *see also Hamilton*, 848 F.3d at 629 ("[A] state law felon cannot pass the first step of the *Chester* inquiry when bringing an as-applied challenge to a law disarming felons, unless that person has received a pardon or the law forming the basis of the conviction has been declared unconstitutional or otherwise unlawful. . . . Hamilton thus fails at step one of the *Chester* analysis.").

Although these cases were decided before *Bruen*, they did not apply the second step in *Chester* – instead, they focused on whether the defendant was the type of person protected by the Second Amendment. The *Bruen* Court noted "Step one is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 142 S. Ct. at 2117-18. The first step in the *Chester* analysis, therefore, is similar to the first step of the *Bruen* analysis. Although *Bruen* specifically rejected the second step of the *Chester* framework, the Fourth Circuit in *Moore* and *Pruess* did not reach the second step; instead, it analyzed whether the defendants' conduct was protected by the Second Amendment. Because they determined the defendants' challenges failed on the first step of the *Chester* analysis, they conducted an analysis similar to that set forth in *Bruen*. Accordingly, although decided prior to *Bruen* and purportedly

under the *Heller/Chester* framework, these cases did not apply means-end scrutiny and thus do not run afoul of the *Bruen* test. *See United States v. Williams*, No. 3:22-cr-158-HEH, 2023 WL 6368971, at * 5 (E.D. Va. Sept. 28, 2023) (finding Fourth Circuit pre-*Bruen* precedent controlling because it was neither specifically rejected nor clearly undermined by *Bruen*). As such, they likely remain good law in the Fourth Circuit and bind this court until a contrary opinion is issued by the Fourth Circuit or the Supreme Court. *See also Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023) (affirming dismissal of a non-violent felon's challenge to her § 922(g)(1) conviction based on prior decision upholding § 922(g) after *Heller*, and finding *Bruen* did not "indisputably and pellucidly abrogate our precedential opinion" "[g]iven six Justices' reaffirmation of the *Heller* language" regarding the constitutionality of longstanding prohibitions on possession of firearms by convicted felons.).

    b. <u>Case Law from Other Circuits</u>

        i. <u>Section 922(g)(1)</u>

Three Circuits have addressed the constitutionality of § 922(g)(1) after *Bruen*, with differing results. The Third Circuit faced an as-applied challenge from an individual who wished to purchase a firearm for hunting or protection purposes. The plaintiff, Range, was unable to do so due to a prior conviction for making a false statement to obtain food stamps – a misdemeanor under Pennsylvania law, punishable by up to five years' imprisonment. *Range v. Attorney General of United States of America*, 69 F.4th 96, 98 (3d. Cir. 2023). Applying *Bruen*, the *en banc* Third Circuit determined Range is one of "the people" the Second Amendment protects, despite his prior conviction, because the references to "law-abiding, responsible citizens" in *Heller*, *McDonald*, and *Bruen* were dicta and thus "the people" presumptively includes "all Americans." *Id.* at 101. The court then determined the Second Amendment covers the plaintiff's conduct, the Constitution

9

presumptively protects that conduct, and the government failed to demonstrate § 922(g)(1) is consistent with the historical tradition of firearm regulation. *Id*. at 103. The court noted, however, the decision "is a narrow one," as the defendant "challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of 62 Pa. Stat. Ann § 481(a)." *Id.* at 106.

The Eighth Circuit, on the other hand, rejected a defendant's as-applied challenge to § 922(g)(1) "based on his particular felony convictions" for sale of controlled substance in the second degree in 2011 and 2012. *United States v. Jackson*, 69 F.4th 495, 498, 501 (8th Cir. 2023). The court concluded there was no need for "felony-by-felony litigation regarding the constitutionality of § 922(g)(1)" based on the language in *Heller*, *McDonald*, and *Bruen*, reaffirming the right to bear arms is "subject to certain reasonable, well-defined restrictions." *Id.* at 501-02. It explored a historical analysis of the right to bear arms and its restrictions, including "prohibitions on possession by certain groups of people," finding § 922(g)(1) "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 502. Section 922(g)(1) was created as analogous to historical restrictions on firearms "to address modern conditions." *Id.* at 504. In sum, it concluded "legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms," and "Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons." *Id.* at 505. Accordingly, the court determined § 922(g)(1) was constitutional as applied to the defendant. *Id.* at 506.

As mentioned above, the Tenth Circuit also rejected a post-*Bruen* challenge to § 922(g)(1). *Vincent*, 80 F.4th at 1202. That circuit had decided, prior to *Bruen*, that § 922(g)(1) was constitutional under the Second Amendment. *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009). The *Vincent* court determined *McCane* was not displaced or overruled by *Bruen*,

10

because its reasoning was based on the Supreme Court's recognition of constitutionality of "longstanding prohibitions on possession of firearms by convicted felons," which *Bruen* did not "appear to question." *Vincent*, 80 F.4th at 1201 (citing *McCane*, 573 F.3d at 1047). "Given the six Justices' reaffirmation of the *Heller* language and the Court's apparent approval of 'shall-issue' regimes and related background checks, we conclude that *Bruen* did not indisputably and pellucidly abrogate our precedential holding in *McCane*." *Id*. at 1202. Accordingly, the court followed *McCane* and determined § 922(g)(1) remained constitutional. *Id.*

      ii.   Other Subsections of 922(g)

The Fifth Circuit has decided two cases addressing constitutionality of other subsections of § 922(g): *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915 (June 30, 2023), regarding § 922(g)(8), which restricts firearm possession by those subject to domestic violence restraining orders; and *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), concerning § 922(g)(3), prohibiting possession of firearms by "unlawful users" of a controlled substance. That court found both subsections unconstitutional as applied to the defendants.

In *Rahimi*, the court determined the defendant, as a person subject to a domestic violence restraining order, was among those citizens entitled to Second Amendment protection. That court distinguished defendants convicted of a crime punishable by a term exceeding one year, noting

> *Heller* simply use[d] 'law-abiding, responsible citizens' as shorthand in explaining that its holding (that the amendment codifies an individual right to keep and bear arms) should not 'be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . . In other words, *Heller's* reference to 'law abiding, responsible citizens' meant to exclude from the Court's discussion groups that have historically been stripped of their Second Amendment rights, i.e. groups whose disarmament the Founders 'presumptively' tolerated or would have tolerated.

*Id.* at 452. The court noted Rahimi did not fall into such a group, but was "subject to an agreed domestic violence restraining order that was entered in a civil proceeding." *Id.* Further, the court determined, firearm restriction on persons subject to civil domestic violence restraining orders, as set forth in § 922(g)(8), does not have an historical analogue and thus the Government failed to demonstrate the restriction therein "fits within our Nation's historical tradition of firearm regulation." *Id.* at 460. Accordingly, § 922(g)(8) was declared unconstitutional as applied to Rahimi and his conviction was vacated. *Id.* at 461. The Supreme Court has granted certiorari in *Rahimi*, and it is set for oral argument on November 7, 2023.

In *Daniels*, the Fifth Circuit considered a Second Amendment challenge to § 922(g)(3), which prohibits firearm possession by an "unlawful user" of a controlled substance. 77 F.4th at 339. First, the court determined the Second Amendment applies to Daniels and thus he has a presumptive right to bear arms. It again distinguished unlawful users of controlled substances from felons, who were "exclude[d] from the discussion" of Second Amendment protection as people who were historically "stripped of their Second Amendment rights." *Id.* at 343. Accordingly, "[b]ecause Daniels [wa]s not a felon or mentally ill, *Rahimi's* treatment of the 'law-abiding' moniker suggests that he has presumptive Second Amendment rights as well." *Id.* The court then determined the nation did not have a historical tradition of firearm regulation for people who were "unlawful users" of controlled substances. *Id.* at 355. Notably, the Fifth Circuit did not "invalidate the statute in all its applications, but, importantly, only as applied to Daniels," whose conviction was reversed. *Id.*

    c. <u>Analysis of the Instant Case</u>

As an initial matter, assuming *arguendo* the Fourth Circuit cases of *Moore* and *Pruess* remain good law after *Bruen*, this court is bound by those determinations that § 922(g)(1) does not

12

violate the Second Amendment. Accordingly, Defendant's facial challenge would fail under the holdings and analysis of *Moore* and *Pruess*, which found § 922(g)(1) constitutional. Specifically, *Moore* found any facial challenge to § 922(g)(1) fails based on the "clear declaration in *Heller*" that felon in possession laws were a "presumptively lawful regulatory measure." 666 F.3d at 318-19. Further, the Fourth Circuit in both cases found as-applied challenges were unsuccessful considering the challengers' criminal histories, placing their conduct outside that of a "law abiding, responsible citizen" protected by the Second Amendment. Here, Defendant's criminal history includes three felony convictions, and thus he is not a "law abiding, responsible citizen."[2]

In the alternative, the court evaluates Defendant's challenges solely under the *Bruen* framework. First, the court considers whether the plain text of the Second Amendment covers Defendant's conduct. The court finds Defendant does not fall within the text of the Second Amendment's definition of "the people," as he has been convicted of three crimes punishable by a term of imprisonment exceeding one year and thus is not the law-abiding citizen referenced in *Bruen* and *Heller*. Second, § 922(g)(1) is "presumptively lawful," and it is clear from the language in *Heller*, *McDonald*, and a numerical majority of Justices in *Bruen* that support for § 922(g)(1) and its restrictions on felons possessing firearms has not wavered. This court gives the *Heller* dicta, that the Court does not "cast doubt on longstanding prohibitions on the possession of firearms by felons," the significant weight it is due. Accordingly, Defendant's conduct of possessing a firearm is not protected by the Second Amendment. Defendant's facial challenge to § 922(g)(1), fails because he is not within the definition of "the people."

---

[2] Although Defendant does not bring an as-applied challenge here, in order to succeed in a facial challenge, he must establish "the law is unconstitutional in all of its applications." *Grange*, 552 U.S. at 449.

13

In an abundance of caution, the court will also consider *Bruen's* second prong: whether the government can justify § 922(g)(1) by demonstrating it is consistent with the historical tradition of firearm regulation. If "a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131. Similarly, if historically the problem was addressed, but through "materially different means, that could also be evidence that a modern regulation is unconstitutional." *Id.* If there is no historical regulation that addresses the same problem, however, a somewhat different analysis applies. "When confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy. . . Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id.* at 2132. Two metrics, derived from *Heller* and *McDonald*, are involved: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. The central considerations for an analogical inquiry are "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* (quoting *McDonald* and *Heller*). The government must identify a "well-established and historical analogue, not a historical twin." *Id.*

As noted by *Bruen*, the Second Amendment "codified a pre-existing right," and thus "was not intended to lay down a novel principle but rather codified a right inherited from our English ancestors." *Id.* at 2127. As such, the Court acknowledged English laws regarding an individual right to keep and bear arms. *Id.* Accordingly, English laws restricting firearm possession for those the legislature "viewed as unwilling to obey the law" are relevant to the historical analysis of

14

firearm restrictions. *Range*, 69 F.4th at 122 (Krause J., dissenting). This tradition continued when the English, arriving in the colonies, "repeatedly disarmed full-fledged members of the political community as it then existed – *i.e.*, free, Christian, white men – whom the authorities believed could not be trusted to obey the law." *Id.* (citing Nicholas J. Johnson et al., *Firearms Law and the Second Amendment: Regulation, Rights, and Policy* 174 (3d ed. 2022)); *see also United States v. Yancey*, 621 F.3d 681, 685-65 (7th Cir. 2010) ([M[ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'"). In addition, "some of the earliest firearm laws in colonial America" prohibited gun ownership by status, specifically disallowing Native Americans and Black persons from owning guns.[3] *See Range,* 69 F.4th at 123-24; *see also Jackson,* 69 F.4th at 502 ("In colonial America, legislatures prohibited Native Americans from owning firearms."); *United States v. Jiminez-Shilon*, 34 F.4th 1042, 1047 (11th Cir. 2022) ("[S]everal colonies enacted complete bans on gun ownership by slaves and Native Americans," based on "lack of allegiance to the sovereign."). Disarmament laws were also often based on religious belief in the early days of this Nation. *Jackson,* 69 F.4th at 502 ("Religious minorities, such as Catholics in Maryland, Virginia, and Pennsylvania, were subject to disarmament."); *Range*, 69 F.4th at 123-24. As the founders progressed in their fight against England, state legislatures enacted statutes disarming those who refused to recognize the sovereignty of the rising new nation. *Jackson*, 69 F.4th at 503 ("In the era of the Revolutionary War, the Continental Congress, Massachusetts, Virginia, Pennsylvania, Rhode Island, North Carolina, and New Jersey prohibited possession of

---

[3] Although this country now prohibits such laws as unconstitutional, they are cited here to demonstrate the Nation's tradition regarding firearm restrictions based on categorical status.

firearms by people who refused to declare an oath of loyalty."); *Range,* 69 F.4th at 124-25 (citing laws from Connecticut, Virginia, and Pennsylvania).

In the early days of the Nation, criminal penalties often included disarmament through estate forfeiture, or even harsher penalties including death. Many felonies were capital offenses, and some non-capital offenses resulted in forfeiture of entire estates, including firearms, to the government. *See Baze v. Rees*, 553 U.S. 35, 94 (Thomas J., concurring) (citing Stuart Banner, The Death Penalty: An American History 23 (2002)) (noting in the late 18th century, the death penalty was "the standard penalty for all serious crimes."); *Range*, 69 F. 4th at 127 n.98-99 (Krause J., dissenting). Colonial legislatures punished more minor firearms infractions with partial disarmaments as well. *Id.* at 127 n.100.

Based on this historical review, it appears there are sufficient historical analogues that restricted gun possession and/or ownership at the time the country was founded and the founders codified the Second Amendment. Section 922(g)(1) functions similarly to these laws that disarmed groups of "the people" based on status, lack of fealty to the Nation, or criminal violations, and allows for restoration of the right to bear arms by expungement, pardon, or restoration of rights under state law. The current law therefore imposes a comparable burden to the historical ones, and the burden is comparably justified. Accordingly, § 922(g)(1) is consistent with this Nation's historical tradition of firearm regulation, and the government is able to justify the burden it places on firearm owners who have been convicted of a crime punishable by a term of imprisonment exceeding one year.

### 3. Conclusion

For the above reasons, the court finds Defendant's facial challenge to § 922(g)(1) fails. So far as *Moore* and *Pruess* remain in effect, Fourth Circuit precedent holding § 922(g)(1) constitutional

binds this court. Even without this precedent, under a *Bruen* analysis, the court reaches the same result. First, Defendant's conduct is outside coverage of the plain text of the Second Amendment: as a convicted, three-time felon, Defendant is not one of the "law-abiding" people to which the Second Amendment applies. Second, the historical tradition of firearm restriction in this country provides historical analogues for restrictions based on status and criminal acts. Accordingly, Defendant's motion to dismiss the Indictment (ECF No. 44) is denied.

    **IT IS SO ORDERED**.

s/Cameron McGowan Currie  
CAMERON MCGOWAN CURRIE  
Senior United States District Judge

Columbia, South Carolina  
October 25, 2023